Daniel Cooper (Bar No. 153576)
E-mail: cleanwater@sfo.com
Michael Chappell (Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Attorneys for Plaintiff
SAN BRUNO MOUNTAIN WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN BRUNO MOUNTAIN WATCH, a non-profit corporation,<br><br>Plaintiff,<br>v.<br><br>BROOKFIELD NORTHEAST RIDGE II, LLC, a California limited liability company, BROOKFIELD BAY AREA BUILDERS, INC., a Delaware corporation, BROOKFIELD HOMES, a Delaware corporation, and BROOKFIELD HOMES OF CALIFORNIA, INC., a Delaware corporation,<br><br>Defendants. | Civil Case No.: ___________<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

San Bruno Mountain Watch, ("Mountain Watch" or "Plaintiff"), by and through its counsel, hereby alleges:

**I. JURISDICTION AND VENUE**

1. This is a civil action brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1365. This Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Act, 33 U.S.C. § 1365(a) (citizen suits authorized by the Clean Water Act), 28 U.S.C. § 1331 (Federal Courts have jurisdiction over actions arising under the laws of the United States), and 28 U.S.C. § 1367(a) (Federal Courts have jurisdiction over claims that arise out of the same case or controversy as a claim over which the Federal Courts have original jurisdiction). There is a real and present controversy between the parties. Mountain Watch seeks declaratory and injunctive relief against Brookfield Northeast Ridge II, LLC, Brookfield Bay Area Builders, Inc., Brookfield Homes, and Brookfield Homes of California, Inc., ("Brookfield Homes" or "Defendants") under 28 U.S.C. §§ 2201 and 2202 (declaratory judgment action).

2. Venue is appropriate in this District and Court pursuant to 28 U.S.C. § 1391(b), because the events and omissions giving rise to these claims occur in the Northern District of California.

3. On January 3, 3008, Mountain Watch provided written notice as required by the Act, 33 U.S.C. § 1365(b), to Brookfield Homes of its violations of the Act and of Mountain Watch's intent to file suit (hereinafter "Notice Letter"). More than the requisite 60-days have passed since the Notice Letter was issued to Brookfield Homes, and this action may now go forward. The Notice Letter was also provided to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the California State Water Resources Control Board ("State Board"); and the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Board").

4. Mountain Watch is informed, believes, and alleges that no State or Federal Agency, including but not limited to, the EPA, the State Board or the Regional Board, has commenced or is diligently prosecuting a Court action to redress the violations alleged in this complaint. This action is

not barred by any prior administrative penalty under Section 309(g) of the Act. 33 U.S.C. § 1319(g).

## II. INTRADISTRICT ASSIGNMENT

5. Pursuant to Local Rule 3-2(c), intradistrict assignment of this matter to the San Francisco Division of the Court is appropriate in that the events or omissions which give rise to Mountain Watch's claims occurred in San Mateo County. In addition, may of Mountain Watch's members reside in the City of County of San Francisco. No event or omission giving rise to plaintiff's claims occurred in any other Division of this Court.

## III. INTRODUCTION

6. This complaint seeks relief from Brookfield Homes' discharge of polluted storm water from its Landmark at the Ridge construction site located at Silverspot Drive, Court B, and Golden Astor Court, Brisbane, California (hereinafter "Landmark Project). Brookfield Homes discharges polluted storm water into waters of the United States in violation of the State of California's Construction Permit for Discharges of Storm Water Associated with Construction Activities[1] ("Construction Permit") and the Clean Water Act. Mountain Watch also seeks relief from Brookfield Homes' systematic and continuing violations of the management, monitoring, reporting, and other procedural and substantive requirements of the Construction Permit.

7. Pollution carried by storm water during rain events has been identified in virtually every study conducted as the largest source of contamination to surface waters in California and the Nation. California's 2006 Clean Water Act 303(d) list ("CWA 303(d) list") includes 779 water bodies listed by EPA and the State Board as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation. The 2006 CWA 303(d) list is an increase of 13.7% from the 685 water bodies on the 2002 CWA 303(d) list, which was an increase of almost 35% from the prior 1998 CWA 303(d) list of 509 impaired waters, which was a 64.7% increase over the 309 listed waters in 1994. The 2006 CWA 303(d) list is an increase of 252% from the original

---

[1] State Board Order No. 99-08-DWQ, National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS000002. Order No. 99-08-DWQ is a continuation of the prior permit, State Board Order No. 92-08 DWQ. Order No. 99-08 was modified by the document entitled: "Modifications to Water Quality Order 99-08-DWQ, State Water Resources

1994 CWA 303(d) list. For the overwhelming majority of water bodies listed as impaired, storm water run-off is cited as the primary source of the pollutants causing the impairment.[2]

8. The EPA has identified building construction as a serious contributor to the general storm water pollution problem. Construction sites have been identified as significant dischargers of polluted storm water, including storm water containing high concentrations of silt, turbidity, oil, grease, trash, sewage, and other chemicals used in construction activities and equipment maintenance. *National Pollutant Discharge Elimination System – Regulations for Revisions of the Water Pollution Control Program Addressing Storm Water Discharges*, 64 Fed. Reg. 68722, 68728-68733 (December 8, 1999); *Final National Pollutant Discharge Elimination System (NPDES) General Permit for Storm Water Discharges From Construction Activities*, 63 Fed. Reg. 15622, 15627 (March 31, 1998). Thus, construction sites have the potential to chemically, biologically and physically impact water quality.

9. It is generally acknowledged that erosion rates from construction sites are much greater than from almost any other land use activity. *Water Quality: Prevention, Identification and Management of Diffuse Pollution*, Novotny, V. & H. Olem (Van Nostrand Reinhold 1994). An important focus and intent of the Construction Permit is the prevention of storm water pollution in the form of soil erosion and water body sedimentation caused by earth-moving activities at construction sites. *See* Construction Permit Sections A(6 – 10). Once natural vegetation and groundcover are disturbed by grading and the operation of trucks and other heavy construction equipment, the disturbed land becomes vulnerable to erosion. Any significant rainfall event has the potential to cause large amounts of sediments and other pollutants associated with construction activities to wash down hillsides and into bays, oceans, rivers, lagoons, and their tributaries, resulting in the deterioration of water quality and harm to aquatic species and habitats. In issuing its final regulations in 1990, EPA noted that "[e]ven a small amount of construction may have a significant negative impact on water quality in localized areas. Over a short period of time, construction sites can contribute more sediment to streams than

---

Control Board, NPDES General Permit for Storm Water Discharges Associated with Construction Activity."

[2] *See*, the State Board's publication entitled "2002 California Section 305(b) Report On Water Quality", prepared as required by Section 303(d) of the Act, 33 U.S.C. 1313(a).

previously deposited over several decades." 55 Fed. Reg. 47990 (November 16, 1990). Discharges of sediment are a concern because sediment clogs water channels, reduces water depth, and destroys aquatic habitat.

10. In addition to sediment, construction sites also generate other types of pollutants including trash, concrete materials, sanitary wastes, oil, grease, fuel, stucco, paint, solvents, debris, and other materials associated with onsite activities.

11. Mountain Watch is informed, believes, and alleges, that because of Brookfield Homes' failure to comply with the Act and the Construction Permit, pollutants are exposed to and carried by storm water from the Landmark Project down San Bruno Mountain, through city streets or culverts, storm drains, and/or ditches, which flow to the Brisbane lagoon and the San Francisco Bay (collectively referred to as the "Receiving Waters"). Mountain Watch is informed, believes, and thereupon alleges, that these discharges adversely affect the beneficial uses and ecological health of the Receiving Waters into which Brookfield Homes is discharging pollutants.

## IV. PARTIES

### A. San Bruno Mountain Watch

12. Plaintiff Mountain Watch is a non-profit public benefit corporation organized under the laws of the State of California with its office at 44 Visitacion Avenue, Brisbane, CA 94005. Mountain Watch has over 2,000 members who live and/or recreate in and around San Bruno Mountain.

13. Mountain Watch's mission is to protect and preserve San Bruno Mountain as the largest and richest remaining example of the native Franciscan bioregion, elsewhere destroyed by the spread of San Francisco and its neighboring cities in the urbanized northern San Francisco Peninsula. To further these goals, Mountain Watch actively seeks Federal and State agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

14. Members of Mountain Watch reside near San Bruno Mountain area receiving waters,

including the Brisbane Lagoon and the San Francisco Bay. Members of Mountain Watch use and enjoy the Receiving Waters into which pollutants from Brookfield Homes' ongoing illegal activities are discharged. Members of Mountain Watch use area waterways to fish, boat, swim, birdwatch, view wildlife and engage in scientific study, including monitoring activities. The discharge of pollutants from the Landmark Project impairs those uses. Thus, the interests of Mountain Watch's members have been, are being, and will continue to be adversely affected by Brookfield Homes failure to comply with the Clean Water Act and the Construction Permit.

15. Mountain Watch's members will continue to be harmed until Brookfield Homes bring its construction activities into compliance with the law. The relief sought herein will redress the harm to Mountain Watch's members caused by Brookfield Homes' activities.

**B. Brookfield Homes**

16. Information currently available to Mountain Watch indicates that Brookfield Homes is comprised of several for-profit corporations or limited liability companies.

17. Information currently available to Mountain Watch indicates that Brookfield Homes, Brookfield Northeast Ridge II, LLC, Brookfield Bay Area Builders, Inc., and Brookfield Homes of California, Inc. are the owners and/or developers of the Landmark Project. Such information includes Brookfield Homes' own website, which lists the Landmark at the Ridge development; the State Board via the required Notice of Intent to Comply with the Construction Permit letter for the Landmark Project filed by Brookfield Homes; information from the California Secretary of State website, which contains corporate filings for all corporations or LLP's operating in California; and documents submitted by Brookfield Homes to various City of Brisbane and San Mateo County regulatory agencies, including planning applications and a site activity permit.

18. The California Secretary of State website lists Brookfield Homes and Brookfield Bay Area Builders, Inc., as separate Delaware corporations, and Brookfield Northeast Ridge II, LLC, as a limited liability company. Each company operates in California, and all have the same address of Pointe Del Mar Way, Suite 200, Del Mar, CA 09014. Further, each company lists Elizabeth Zepeda as its registered agent, with the same Del Mar address. The California Secretary of State website lists Brookfield Homes of California, Inc.'s address as 200 Vesey Street, 11th Floor 3 World Trade Center

New York, NY 10281, with Corporation Service Company as the registered agent.

## V. STATUTORY BACKGROUND

### A. The Clean Water Act

19. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various sections of the Act. The Act requires any person who discharges or proposes to discharge pollutants into the waters of the United States to submit an NPDES permit application. 33 U.S.C. §§ 1342(p)(2)(B), 1342(p)(3)(A); 40 C.F.R. §§ 122.21(a) and 122.26(a)(ii). Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

20. Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f); and 33 U.S.C. § 1362(5).

21. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of $32,500 per day per violation of the Act, pursuant to Section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1 - 19.4 (pp. 200-202).

22. Section 505(d) of the Act, 33 U.S.C. §1365(d), permits prevailing parties to recover legal fees and costs expended in citizen enforcement of the Act.

### B. The Construction Permit

23. The EPA has delegated the task of issuing NPDES permits to California pursuant to the provisions of the Act. Section 402(p) of the Act establishes a framework for regulating storm water discharges associated with industrial activity under the NPDES permit system. Construction activity is regulated as an industrial activity under the Act. 40 C.F.R. § 122.26(b)(14)(x).

24. To control discharges of pollutants from construction activities, the State Board has elected to issue a single, Statewide general permit applicable to all storm water discharges associated with construction activity. The owners and operators of construction projects are required to have obtained coverage under the Construction Permit prior to the initiation of construction activities.

Permittees are further required to fully comply with the procedural and substantive requirements of the Construction Permit during and after construction activities.

25. A violation of the Construction Permit is a violation of the Clean Water Act. 33 U.S.C. § 1311.

26. Under State Board regulations, a Construction Permit is required for all construction activity such as clearing, grading, stockpiling, excavation and other ground disturbances, which results in soil disturbance of greater than one acre of total land area. State Board Order 99-08-DWQ; 40 C.F.R. § 122.26(b)(15). Construction activity of less than one acre may also be subject to the Construction Permit if the construction activity is part of a larger common plan of development that encompasses one or more acres of soil disturbance, or if there is a significant water quality impairment resulting from the activity. *Id.*

**1. Discharge Prohibitions**

27. The Construction Permit contains certain absolute prohibitions. The Construction Permit prohibits: direct or indirect discharges of materials other than storm water ("non-storm water discharges") not otherwise authorized by an NPDES permit (Discharge Prohibition A(2)); discharges that cause or threaten to cause pollution, contamination, or nuisance (Discharge Prohibition A(3)); discharges that adversely impact human health or the environment (Receiving Water Limitation B(1)); and discharges that cause or contribute to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Water Quality Control Plan (Receiving Water Limitation B(2)).

**2. Storm Water Pollution Prevention Plan**

28. The Construction Permit requires Brookfield Homes to develop and implement an adequate Storm Water Pollution Prevention Storm Plan ("SWPPP") for the Landmark Project prior to the commencement of construction activities. (Construction Permit, Sections A.1, A.2). The SWPPP must include Best Management Practices ("BMPs") to ensure that storm water discharges from the Landmark Project meets the performance standards of Best Available Technology Economically Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT"). (Construction Permit, Special Provision C(2)).

29. Each SWPPP must be developed, amended and revised to meet the SWPPP objectives of identifying all pollutant sources and non-storm water discharges at the Landmark Project, and to ensure that BMPs are implemented and maintained to reduce or eliminate pollutants in storm water discharges and authorized non-storm water discharges during and after construction activities. (Construction Permit, Section A(1)).

30. The SWPPP must be amended if, among other things, the discharger violates any condition of the Construction Permit or has not achieved the objective of reducing or eliminating pollutants in storm water discharges. (Construction Permit, Section A(4)). The SWPPP must also include: site specific Landmark Project information including site maps, drainage patterns, and site features; pollutant source identification; and an itemization of BMPs to control the listed pollutants. (Construction Permit, Section A(5)).

31. The SWPPP must specifically identify BMPs that will control erosion and stabilize soil disturbed areas; control sediment discharge, including the prevention of a net increase of sediment load in storm water discharges; prevent all non-storm water discharges wherever feasible; prevent run-off; and minimize post construction pollutant discharges. (Construction Permit, Sections A(6 – 10)).

32. The SWPPP must also include a program to inspect and maintain all BMPs through the duration of the Landmark Project, and to perform immediate corrective action where BMPs are identified as ineffective. (Construction Permit, Section A(11)).

33. Individuals responsible for SWPPP preparation, implementation and permit compliance must be trained, and this training must be documented in the SWPPP. (Construction Permit, Section A(12)).

**3. Monitoring and Reporting Plan**

34. The Construction Permit requires each discharger to develop a written monitoring and reporting program ("M&RP") to be implemented when construction activities begin, and to remain in effect until construction activities are complete and the site is stabilized. (Construction Permit, Section B(2)).

35. Inspections by qualified personnel must be conducted before, during, and after storm events to assure the proper implementation and functional adequacy of BMPs. (Construction Permit,

Section B(3)).

36. The discharger must develop and implement a sampling and analysis program that requires, among other things, testing of storm water for non-visually detectable pollutants identified in the SWPPP which could cause or contribute to an exceedance of water quality objectives in receiving waters. (Construction Permit, Sections B(8); A(1)(f)).

37. Inspections that identify any breach or malfunctioning of a BMP or any leakage or spill also triggers the collection of samples. (Construction Permit, Section B(8)).

38. The M&RP also includes requirements for annual compliance certification by the above-mentioned inspectors, noncompliance reporting provisions, corrective measure implementation provisions, and retention of monitoring record provisions. (Sections B(4) - B(6)).

**VI. STATEMENT OF FACTS**

39. On February 25, 2002, Brookfield Homes filed a Notice of Intent to be covered under the Construction Permit to commence construction activities at the Landmark Project on February 25, 2002.

40. The Notice of Intent lists the location of the Landmark Project as Silver Spot Drive in Brisbane, San Mateo County, California, 94005.

41. The Landmark Project is greater than 1 acre.

42. Activities at the Landmark Project, which are the source of pollutants, include but are not limited to: heavy grading, cutting and filling; clearing of vegetation; landscaping; construction of buildings and roadways; operation of heavy equipment, dirt trucks, trailers and fuel trucks; the loading and unloading of heavy equipment and other vehicles; the on-site maintenance, refueling and storage of heavy equipment; the storage and use of dirt stockpiles, refuse piles, construction materials, fuel tanks and equipment; the pouring of concrete foundations, and the application of plaster and stucco materials.

43. Observations by Mountain Watch indicate that these activities have caused numerous sources of pollutants to become exposed to storm water flows.

44. On multiple occasions, Mountain Watch investigators have conducted inspections at the Landmark Project and observed Brookfield Homes' failure to implement and/or maintain measures to control erosion at the Landmark Project. Specifically, Brookfield Homes has failed to utilize adequate berming, covering, silt fencing, and binding to prevent erosion of soil. Brookfield Homes has also failed

to implement adequate measures on finished or unfinished slopes, cuts, roadways, unearthed soil, and inactive areas of the Landmark Project to prevent erosion from wind and storm water.

45. Each of these failures enables storm water runoff and/or wind to erode soil and to carry pollutants into waters of the United States and of the State of California. Mountain Watch has collected several samples of the storm water discharged from the Landmark Project.

46. A California State Certified lab analyzed the samples and found that the level of TSS[3] were consistently in excess of the benchmark level of 100 mg/L set forth in the Federal Storm Water Multi-Sector Permit ("Multi-Sector Permit").[4]

47. Information currently available to Mountain Watch indicates that Brookfield Homes is not properly implementing and maintaining BMPs at the Landmark Project that achieve compliance with the Construction Permit and specifically BAT/BCT.

48. Waste piles and debris are not covered and construction materials are improperly stored. Uncovered debris piles are maintained adjacent to streets near storm drains. Construction areas are littered with trash, mud, debris, building materials, supplies, and other pollutants.

49. Brookfield Homes has also not implemented and maintained sufficient pollution prevention measures at ingress and egress points to prevent trackout and erosion from occurring at the Landmark Project. Streets at the Landmark Project are thus frequently covered in mud and debris.

50. Information currently available to Mountain Watch indicates that Brookfield Homes has failed to take adequate steps to effectively filter sediments and other pollutants from storm water discharges, or to prevent their discharge from the Landmark Project. Brookfield Homes has not

---

[3] TSS stands for Total Suspended Solids – a key indicator of the effectiveness of BMPs in controlling the discharge of silt and/or sediment to area waters.

[4] The Multi-Sector Permit, which applies to non-delegated States and Tribal Lands, requires dischargers of stormwater associated with industrial activities to assess the adequacy of the BMPs by comparing discharge sampling results to benchmark levels. 65 Fed. Reg. 64767, Table 3 (October 30, 2000). EPA determined that sample results with pollutant concentrations above benchmark levels represent a "level of concern." The "level of concern" is a concentration at which stormwater discharges could potentially impair, or contribute to impairing water quality…." *Id.* As set forth in the Multi-Sector Permit, if a discharge is above the objective benchmark levels than the "level of concern" for the permittee is that the current BMPs are inadequately developed and/or implemented and the SWPPP is therefore inadequately developed and/or implemented.

installed and maintained adequate sediment basins, and has not adequately placed and maintained sand bags, silt fences, fiber rolls or other water control measures. Where minimal structural controls have been put in place to prevent the discharge of contaminated waters, they have frequently been incapacitated and/or undermined such that their efficacy has been reduced.

51. Brookfield Homes has also failed to install and implement adequate filtration devices at or near storm drain inlets to effectively prevent silt and pollutants from being discharged from the Landmark Project. These failures are evident in soil, sediment, and mud observed flowing off the Landmark Project and into neighboring streets and storm drains.

52. Information currently available to Mountain Watch indicates that Brookfield Homes has not developed and/or implemented or revised an adequate SWPPP for the Landmark Project. Specifically, Brookfield Homes has not developed and/or implemented BMPs that would achieve BAT or BCT. Brookfield Homes has not implemented BMPs that adequately prevent or reduce pollutants in storm water discharges; that adequately protect storm water inlets and receiving waters from pollutant discharges associated with construction activities; that minimize the exposure of storm water to pollutants associated with construction activities; and that control and minimize discharges from sources of pollutants. Brookfield Homes has not developed or implemented a SWPPP that prevents discharges from violating Construction Permit prohibitions, or which achieves the required inspections and maintenance.

53. Information currently available to Mountain Watch indicates that Brookfield Homes has not developed and/or implemented or revised an adequate M&RP for the Landmark Project. Specifically, information currently available to Mountain Watch indicates that Brookfield Homes failed to monitor, identify, meaningfully evaluate, and report illegal discharges, including contaminated storm water discharges, at the Landmark Project.

54. Further, Brookfield Homes has failed to evaluate and correct in any meaningful way, the serious inadequacies of its BMPs as well as its SWPPP and M&RP development and implementation at the Landmark Project.

55. Mountain Watch is informed, believes, and alleges, that as a result of Brookfield Homes' failure to implement the necessary controls and management practices at the Landmark Project, storm

water associated with construction activity and storm water contaminated with pollutants has been and continues to be exposed to and carried by storm water from the Landmark Project into the Receiving Waters.

56. Mountain Watch is further informed, believes, and thereupon alleges, that these discharges adversely affect the beneficial uses, water quality and ecological health of the Receiving Waters into which Brookfield Homes is discharging pollutants.

57. The San Francisco Regional Board's Water Quality Control Plan ("Basin Plan") prohibits the discharge of suspended or settleable solids in amounts that cause a nuisance or adversely affect beneficial uses. *See* Basin Plan, § 3.3.12 & 13. Beneficial uses represent the purposes of the water body that are specifically protected by the Clean Water Act. Pursuant to its authority over designated water bodies, the Regional Board has designated beneficial uses for surface water like the Brisbane Lagoon and the San Francisco Bay. The beneficial uses include Water Contact Recreation, Non-Contact Water Recreation, Warm Freshwater Habitat, Wildlife Habitat, Municipal and Domestic Supply, Agriculture Supply, Industrial Process Supply, Cold Freshwater Habitat, Fish Migration, Fish Spawning, Estuarine Habitat, Industrial Service Supply, Navigation, and Groundwater Recharge. *See* Basin Plan, § 2.2.1. The construction activities at the Landmark Project are representative of activity that contributes to the impairment of the Brisbane Lagoon and/or the San Francisco Bay and results in the inability of the Receiving Waters to sustain the State designated beneficial uses.

## VII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Discharges of Contaminated Storm Water in Violation of Construction Permit Conditions and the Clean Water Act, 33 U.S.C. §§ 1311, 1342**

58. Mountain Watch realleges and incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

59. Mountain Watch is informed, believes, and thereupon alleges that since soil disturbing activities began, Brookfield Homes has been discharging and continues to discharge contaminated storm water from the Landmark Project into the Receiving Waters in violation of the Construction Permit and the Act.

60. Specifically, Mountain Watch is informed, believes, and thereupon alleges that with every rain event Brookfield Homes' discharges contaminated storm water which are causing and/or contributing to pollution and contamination of the waters of the United States in violation of Discharge Prohibition A(3) of the Construction Permit.

61. Mountain Watch is informed, believes, and thereupon alleges that Brookfield Homes' discharges are also adversely affecting human health and the environment in violation of Receiving Water Limitation B(1) of the Construction Permit.

62. Mountain Watch is informed, believes, and thereupon alleges that these discharges of contaminated storm water are contributing to violations of the applicable water quality standards in the Statewide Water Quality Control Plan and/or the Basin Plan in violation of Receiving Water Limitation B(2) of the Construction Permit.

63. Mountain Watch is informed, believes, and thereupon alleges, that Brookfield Homes' discharge of contaminated storm water in violation of the prohibitions of the Construction Permit and the Act are ongoing at the Landmark Project. Brookfield Homes will continue to be in violation of the Construction Permit and the Act each day it discharges contaminated storm water from the Landmark Project in violation of the Construction Permit prohibitions.

64. Each instance of Brookfield Homes' violation of the specific provisions of the Construction Permit and the Act since soil-disturbing activities began constitutes a separate violation of Section 301(a) of the Act, 33 U.S.C. § 1311.

65. By committing the acts and omissions alleged above, Brookfield Homes is subject to an assessment of civil penalties for each violation of the Construction Permit and the Act pursuant to Sections 309(d) and 505(d) of the Act, 33 U.S.C. § 1319(d) and § 1365(d).

66. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Brookfield Homes is subject to an injunction ordering it to cease violating the Construction Permit and the Act.

67. Continuing commission of the acts and omissions alleged above will irreparably harm Mountain Watch and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

68. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Failure to Develop and/or Implement an Adequate Storm Water Pollution Prevention Plan in Violation of the Construction Permit and the Clean Water Act, 33 U. S. C. §§ 1311, 1342**

69. Mountain Watch realleges and incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

70. Mountain Watch is informed, believes, and alleges that Brookfield Homes has failed to adequately develop, revise, and/or fully implement an adequate SWPPP for the Landmark Project. Brookfield Homes is in violation of Section A(1–11) and Provision C(2) of the Construction Permit for failing to adequately develop, revise, and/or fully implement an adequate SWPPP for the Landmark Project.

71. Mountain Watch is informed, believes, and thereupon alleges that Brookfield Homes' failure to adequately develop, revise, and/or fully implement an adequate SWPPP for the Landmark Project is ongoing. Brookfield Homes will continue to be in violation of the SWPPP requirements each day that it fails to adequately develop, revise, and/or fully implement an adequate SWPPP for the Landmark Project.

72. Each instance of Brookfield Homes' violations of the specific provisions of the Construction Permit and the Act since soil-disturbing activities began constitutes a separate violation of Section 301(a) of the Act, 33 U.S.C. § 1311.

73. By committing the acts and omissions alleged above, Brookfield Homes is subject to an assessment of civil penalties for each violation of the Construction Permit and the Act pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. § 1319(d) and § 1365.

74. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Brookfield Homes is subject to an injunction ordering it to cease violating the Construction Permit and the Act.

75. Continuing commission of the acts and omissions alleged above will irreparably harm Mountain Watch and the citizens of the State of California, for which harm they have no other plain,

speedy, or adequate remedy at law.

76. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**Failure to Develop and/or Implement an Adequate Monitoring and Reporting Program in Violation of Construction Permit Conditions and the Clean Water Act, 33 U.S.C. §§ 1311, 1342**

77. Mountain Watch realleges and incorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

78. Mountain Watch is informed, believes, and alleges Brookfield Homes is in violation of Section B(1–8) and Provision C(4) of the Construction Permit for failing to adequately develop, revise, and/or fully implement an adequate M&RP at the Landmark Project.

79. Mountain Watch is informed, believes, and thereupon alleges that Brookfield Homes' failure to adequately develop, revise, and/or fully implement an adequate M&RP is ongoing at the Landmark Project. Brookfield Homes will continue to be in violation of the M&RP requirement each day that it fails to develop or revise an adequate M&RP for the Landmark Project.

80. Each instance of Brookfield Homes' violation of the specific provisions of the Construction Permit and the Act since soil-disturbing activities began constitutes a separate violation of Section 301(a) of the Act, 33 U.S.C. § 1311.

81. By committing the acts and omissions alleged above, Brookfield Homes is subject to an assessment of civil penalties for each violation of the Construction Permit and the Act pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. § 1319(d) and 1365.

82. An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Brookfield Homes is subject to an injunction ordering it to cease violating the Construction Permit and the Act.

83. Continuing commission of the acts and omissions alleged above will irreparably harm Mountain Watch and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

84. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**VIII. RELIEF REQUESTED**

85. Wherefore, Mountain Watch respectfully requests that this Court grant the following relief:

a. Enter judgment declaring that Brookfield Homes violated and is in violation of the requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), as alleged herein, for violating the procedural and substantive requirements of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342;

b. Issue a Court order enjoining Brookfield Homes from further violating the substantive and procedural requirements of the Clean Water Act and the Construction Permit;

c. Issue a Court order enjoining Brookfield Homes from discharging pollutants from its Landmark Project into area surface waters surrounding and downstream from the Landmark Project, including the Receiving Waters;

d. Issue a Court order ordering Brookfield Homes to take appropriate actions to restore the quality of waters of the United States impaired by its activities;

e. Issue a Court order requiring Brookfield Homes to pay civil penalties of $32,500 per day per violation or such other amount as the Court may deem appropriate, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 – 19.4;

f. Issue a Court order awarding Plaintiff's costs (including reasonable attorney and expert fees, and other litigation costs) as authorized by the Act, 33 U.S.C. § 1365(d), and;

g. Grant any such other and further relief as this Court may deem appropriate.

Dated: March 10, 2008

LAWYERS FOR CLEAN WATER, INC.

/s/ Daniel Cooper

Daniel Cooper
Michael J. Chappell
Attorney for Plaintiff
San Bruno Mountain Watch