Daniel Cooper (Bar No. 153576)
E-mail:  cleanwater@sfo.com
Drevet Hunt (Bar No. 240487)
LAWYERS FOR CLEAN WATER, INC.
1004 O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Brian Gaffney (Bar No. 168778)
LAW OFFICES OF BRIAN GAFFNEY
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 442-0711
Facsimile: (415) 442-0713
Email: brian@gaffneylegal.com

Attorneys for Plaintiff
SAN BRUNO MOUNTAIN WATCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN BRUNO MOUNTAIN WATCH, a non-profit corporation,<br><br>               Plaintiff,<br><br>     v.<br><br>BROOKFIELD NORTHEAST RIDGE II, LLC, a California limited liability company, BROOKFIELD BAY AREA BUILDERS, INC., a Delaware corporation, BROOKFIELD HOMES, a Delaware corporation, and BROOKFIELD HOMES OF CALIFORNIA, INC., a Delaware corporation,<br><br>               Defendants. | Civil Case No.: CV-08-1366 SBA<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:      July 16, 2008<br>Time:     3:45 p.m.<br>Location: Oakland Federal Court,<br>           Courtroom 3, 3rd Floor<br>Judge:   Honorable Saundra B. Armstrong |

1      The parties in the above-entitled action submit this Joint Case Management Statement.  Daniel

2  Cooper, Lawyers for Clean Water, Inc., counsel for an San Bruno Mountain Watch, ("Plaintiff"), and

3  Keith Garner, Sheppard, Mullin, Richter, & Hampton, LLP, counsel for Defendants Brookfield

4  Northeast Ridge II LLC, Brookfield Bay Area Builders Inc., and Brookfield Homes of California Inc.

5  (collectively "Defendants") met telephonically on May 27, 2008, and discussed the matters set forth in

6  the Court's Standing Order For All Judges Of The Northern District of California.  Based on that

7  meeting, Plaintiff and Defendants (collectively referred to as the "Parties") hereby report to the Court as

8  follows:

9  **1.**    **JURISDICTION AND SERVICE**

10    <u>Plaintiff's Statement</u>:  This is a civil action brought under the citizen suit enforcement provisions

11  of the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1365.  This Court

12  has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Act, 33 U.S.C. §

13  1365(a) (citizen suits authorized by the Clean Water Act), 28 U.S.C. § 1331 (Federal Courts have

14  jurisdiction over actions arising under the laws of the United States), and 28 U.S.C. § 1367(a) (Federal

15  Courts have jurisdiction over claims that arise out of the same case or controversy as a claim over which

16  the Federal Courts have original jurisdiction).  All parties in this action have been served.

17    <u>Defendants' Statement</u>:  This Court may not have jurisdiction over this action because the

18  citizen suit enforcement provisions of the Clean Water Act do not authorize actions for wholly past

19  violations.  Service was not effectuated on Brookfield Homes.  The registered agent for service of

20  process for Brookfield Northeast Ridge II LLC and Brookfield Bay Area Builders Inc. (collectively

21  "Brookfield") did not accept service for Brookfield Homes, which does not exist as a corporate entity

22  but is instead a marketing name occasionally used by Brookfield.  Defendants have asked Plaintiff to

23  dismiss Brookfield Homes and Brookfield Homes of California Inc., a corporate sibling that has no role

24  or interest in the development in dispute in this action.

25  **2.**    **CHRONOLOGY OF FACTS AND PRINCIPAL FACTUAL ISSUES IN DISPUTE**

26    <u>Plaintiff's Chronology of Facts</u>:  On February 25, 2002, Defendants filed a Notice of Intent to be

27

28

1    covered under the Construction Permit[1] to commence construction activities at Silver Spot Drive in

2    Brisbane, San Mateo County, California, 94005 (hereinafter the "Landmark Project").  Plaintiff's

3    investigators have inspected the Landmark Project multiple times and observed Defendants' failure to

4    implement and/or maintain measures to control erosion.  Each of these failures enables storm water

5    runoff to carry pollutants into waters of the United States ("Waters") and of the State of California in

6    violation of the Clean Water Act and the Construction Permit.

7           A California State Certified lab analyzed the several storm water samples that Plaintiff collected

8    from the Landmark Project and found that the level of TSS[2] were consistently in excess of the

9    benchmark level of 100 mg/L set forth in the Federal Storm Water Multi-Sector Permit ("Multi-Sector

10   Permit").[3]  Thus, Defendants are not properly implementing and maintaining BMPs at the Landmark

11   Project that comply with the Construction Permit.  Based on visual observations and storm water

12   samples, Defendants have not developed and/or implemented or revised an adequate Storm Water

13   Pollution Prevention Plan ("SWPPP") and Monitoring and Reporting Program ("M&RP") that prevents

14   discharges from violating the Construction Permit.

15          <u>Plaintiff's Statement re Factual Issues in Dispute</u>:  Injunctive relief will revolve around

16   Defendants' elimination of unlawful discharges, the restoration of the Receiving Waters, and the

17   development and implementation of adequate SWPPP and M&RP for the Landmark Project.  The Clean

18   Water Act and implementing regulations set out criteria for determining the appropriate amount of

19

20

21   ─────────────────

22   [1]  State Board Order No. 99-08-DWQ, National Pollutant Discharge Elimination System ("NPDES") Permit No. CAS000002 (hereinafter the "Construction Permit).

23   [2]  TSS stands for Total Suspended Solids – a key indicator of the effectiveness of Best Management Practices ("BMPs") in controlling the discharge of silt and/or sediment to area waters.

     [3]  The Multi-Sector Permit, which applies to non-delegated States and Tribal Lands, requires dischargers of stormwater

24   associated with industrial activities to assess the adequacy of the BMPs by comparing discharge sampling results to

25   benchmark levels.  65 Fed. Reg. 64767, Table 3 (October 30, 2000).  EPA determined that sample results with pollutant concentrations above benchmark levels represent a "level of concern."  The "level of concern" is a concentration at which stormwater discharges could potentially impair, or contribute to impairing water quality…."  *Id.*  As set forth in the Multi-

26   Sector Permit, if a discharge is above the objective benchmark levels than the "level of concern" for the permittee is that the current BMPs are inadequately developed and/or implemented and the SWPPP is therefore inadequately developed and/or

27   implemented.

28

1   penalties for proved violations.  33 U.S.C. § 1319(d).   The factors include seriousness of the violations,

2   economic benefit to the violator, history of violations, efforts to comply, and ability to pay.

3      Defendants' Chronology of Facts:  Brookfield's construction activities within the Northeast

4   Ridge area of Brisbane were authorized under the Construction Permit in 2002, and construction of

5   separate neighborhoods has proceeded since then.  Construction of infrastructure and six homes in the

6   approximately five-acre area around Silverspot Drive, B Court and Golden Aster Court that is the

7   focus of the present dispute began in July 2007.  The site does not drain directly to any Waters, but

8   instead discharges into the City's storm drain system.  Storm water runoff from the site is commingled

9   with runoff from other lands and ultimately discharged into the Brisbane Lagoon, a tidal water body

10  located approximately two miles from the site.  Brookfield is in the final stages of construction, and

11  permanent post-construction erosion control measures are currently in the process of being installed.

12  The six homes are expected to be sold between July and September of 2008.

13      At all stages of construction, including the activities in dispute, Brookfield has complied with

14  all requirements of the Construction Permit and the Clean Water Act.  It has developed, implemented,

15  and (as needed) updated a SWPPP and M&RP with all the elements required under the Construction

16  Permit.  The effectiveness of the storm water BMPs has been monitored daily by trained Brookfield

17  staff, Brookfield's professional contractor, and the City of Brisbane, pursuant to its authority under

18  local ordinance and its own NPDES storm water permit.  Discharges of storm water runoff from the

19  site have been fully authorized under the Construction Permit and have not caused pollution,

20  contamination, or nuisance; adversely impacted human health or the environment; or caused or

21  contributed to exceedance of any applicable water quality standard.  The Landmark Project has

22  received no violations from the City or from the Regional Water Quality Control Board ("Water

23  Board"), the agency with primary enforcement responsibility for the Construction Permit.

24      Defendants' Statement re Factual Issues in Dispute:  The key factual issues in dispute include

25  whether there is an ongoing unauthorized discharge of storm water in violation of the Construction

26  Permit; whether Brookfield properly implemented and maintained adequate BMPs; whether

27  Brookfield has developed and implemented adequate SWPPP and M&RP; and whether there has been

28  any impact on Receiving Waters.  Other disputed factual issues include whether Plaintiff's samples

1   were properly taken.

2   **3.    LEGAL ISSUES**

3       <u>Plaintiff's Statutory Background</u>:  The Clean Water Act is a strict liability statute.  Section

4   301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into Waters

5   unless the discharge complies with various sections of the Act.  Section 301(a) prohibits discharges in

6   violation of the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

7   The Construction Permit is the Statewide general permit applicable to all storm water discharges related

8   to construction activity.  Owners and operators of construction projects are required to have obtained

9   coverage under the Construction Permit prior to initiating construction and must fully comply with the

10   Construction Permit during and after construction activities.  A violation of the Construction Permit is a

11   violation of the Act. 33 U.S.C. § 1311.

12       <u>Primary Legal Issues</u>:  Whether Defendants are liable for the ongoing discharges of

13   contaminated storm water from the Landmark Project into Waters in violation of Discharge

14   Prohibition A(3) and Receiving Water Limitation B(1) and B(2) of the Construction Permit and the

15   Clean Water Act, 33 U.S.C. §§ 1311, 1342?

16       Whether Brookfield Homes is liable for their ongoing failure to develop and/or implement or

17   revise an adequate M&RP or SWPPP in violation of Section A(1–11), Provision C(2) Section B(1–8),

18   and Provision C(4) of the Construction Permit and the Clean Water Act, 33 U. S. C. §§ 1311, 1342?

19       <u>Defendants' Statutory Background</u>:  Defendants generally concur with Plaintiff's statutory

20   background, but observe that the State Water Board, in issuing the Construction Permit, expressly

21   found that establishing numeric effluent limits for construction-related contaminants in storm water,

22   such as the TSS benchmark referred to in Plaintiff's factual chronology, was not feasible.  Instead, the

23   Construction Permit imposes a technology-based performance standard that requires construction site

24   operators to implement controls of pollutants that utilize the best available technology economically

25   achievable ("BAT") and best conventional pollutant control technology ("BCT").  Thus, Plaintiff's

26   reliance on the cited benchmark is misplaced not only because the Multi-Sector Permit does not apply

27   to the construction activities at issue here but also because the Construction Permit contains no such

28   numeric compliance limits.  The Construction Permit requires operators to develop and implement a

1    SWPPP and specifies the elements that must be included in the SWPPP.  The Construction Permit

2    similarly requires operators to develop and implement a monitoring program to evaluate whether

3    BMPs specified in the SWPPP are adequate and properly installed and functioning in accordance with

4    the Construction Permit.

5        Primary Legal Issues:  Defendants dispute that the alleged violations occurred and are ongoing

6    but otherwise generally agree with Plaintiff's statement of the primary legal issues in this action.  In

7    essence, the Court must resolve whether discharges from ongoing activities have caused or are causing

8    pollution, contamination, or nuisance, have adversely impacted or are impacting human health or the

9    environment, or have caused or contributed, or are causing or contributing, to exceedance of any

10   applicable water quality standard; whether the BMPs specified in the SWPPP and implemented in the

11   field satisfy the BAT/BCT standard; and whether the SWPPP and M&RP contain the required

12   elements and have been updated appropriately and implemented effectively.  This Court must

13   determine whether Plaintiff's samples are relevant and can be used to establish a violation of the

14   discharge prohibition and receiving water limitations in the Construction Permit.  The Court must also

15   resolve Plaintiff's standing to bring this action.

16   **4.    MOTIONS**

17       Plaintiff's Statement:  Plaintiff has not filed any prior or pending motions.  Plaintiff anticipates

18   filing a motion for partial summary judgment to establish liability in the next three/four months.  Once

19   liability is established, Plaintiff will conduct a bench trial to establish appropriate injunctive relief,

20   penalties, and attorneys' fees and costs.

21       Defendants' Statement:  Defendants have not filed any prior or pending motions.  Defendants

22   reserve the right to file a cross-motion for summary judgment and other dispositive motions.

23   **5.    AMENDMENT OF PLEADINGS**

24       Plaintiff's Statement:  Plaintiff may amend the pleadings to add or modify claims or parties

25   depending upon information obtained during discovery.

26       Defendants' Statement:  Defendants do not anticipate amending the pleadings.

27   **6.    EVIDENCE PRESERVATION**

28       The Parties have taken steps to ensure that evidence relating to issues relevant in this action have

1  been preserved.  The Parties shall preserve relevant emails, voice mails, and other recorded material.

2  **7.    DISCLOSURES**

3      The Parties made the Fed. R. Civ. P. 26(a)(1) Initial Disclosures on or before June 13, 2008.

4  **8.    DISCOVERY**

5      Plaintiff's Statement:  Neither Party has propounded discovery at this time nor have

6  agreements been made concerning the identification or storage of electronic information.  In

7  conducting discovery, Plaintiff will require discovery on liability, injunctive relief, and penalties.  The

8  Parties' proposed schedule is included in section 17 below.

9      Defendants' Statement:  Defendants will require discovery on Plaintiff's standing, inspections

10  and sampling taken by Plaintiff, liability, injunctive relief, and penalties.

11  **9.    CLASS ACTIONS**

12      Not Applicable.

13  **10.    RELATED CASES**

14      The Parties are not aware of any related cases or proceedings currently pending before another

15  Judge of this Court or before another Court or administrative body.

16  **11.    RELIEF**

17      Plaintiff's Statement:  Plaintiff requests that the Court enter judgment declaring that Defendants

18  have violated and are in violation of the requirements of Section 301(a) of the Clean Water Act, 33

19  U.S.C. § 1311(a); issue an order enjoining Brookfield Homes from discharging pollutants from the

20  Landmark Project into area surface waters; order Brookfield Homes to take appropriate actions to

21  restore the quality of Waters impaired by its activities, (3) order Defendants to pay civil penalties of

22  $32,500 per day per violation, or such other amount as the Court may deem appropriate, and (4) award

23  Plaintiff's attorneys' fees and costs.

24      Defendants' Statement:  Defendants seek dismissal of the case with prejudice and an award of

25  costs and fees to Defendants.

26  **12.    SETTLEMENT AND ADR**

27      The Parties have conducted informal settlement discussions but have not reached an

28  agreement.  The Parties were granted their request to Alternative Dispute Resolution with a Magistrate

1  Judge pursuant to Civil L.R. 3-5.  A settlement conference before Magistrate Judge Maria-Elena James

2  has been scheduled for October 1, 2008.

3  **13.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

4       The Parties do not consent to the designation of a Magistrate Judge to conduct all proceedings.

5  **14.    OTHER REFERENCES**

6       The Parties do not believe that this case is suitable for reference to binding arbitration, a special

7  master, or the Judicial Panel on Multidistrict Litigation.

8  **15.    NARROWING OF ISSUES**

9       <u>Plaintiff's Statement</u>:  Plaintiff believes that the question of Defendants' liability for the claims

10  alleged in its Complaint will likely be resolved via a motion for partial summary judgment, leaving the

11  appropriate amount of civil penalties, injunctive relief, and attorneys' fees and costs for resolution at

12  trial.

13       <u>Defendants' Statement</u>:  Defendants believe that liability on one or more claims is unlikely to be

14  resolved on motion.

15  **16.    EXPEDITED SCHEDULE**

16       <u>Plaintiff's Statement</u>:  Plaintiff believes that this is the type of case that can be handled on an

17  expedited schedule.

18       <u>Defendants' Statement</u>:  See schedule in section 17.

19  **17.    SCHEDULING**

20  The Parties jointly propose the following schedule:

21  **<u>Task</u>**                                          **<u>Deadline</u>**

22  Designation of Experts:                    December 1, 2008

23  Fact discovery cut off:                     December 8, 2008

24  Expert reports due:                         December 15, 2008

25  Rebuttal reports due:                       January 15, 2009

26  Expert discovery cut off:                   February 2, 2009

27  Last day for hearing dispositive motions:   February 23, 2009

28  Final Pre-trial conference date:            March 2, 2009

1    Proposed trial date:                              April 27, 2009

2    **18.    TRIAL**

3        Plaintiff's Statement:  Based on the assumption that most or all issues relating to liability will

4    be resolved via motions for partial summary judgment, Plaintiff estimates that trial will require 2-3

5    Court days to present its case-in-chief, and will require between three and five witnesses.  Plaintiff

6    requests a bench trial.

7        Defendants' Statement:  Defendants believe trial will require approximately six court days and

8    between five and seven witnesses.

9    **19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

10        Plaintiff's Statement:  Plaintiff has filed the "Certification of Interested Entities or Persons"

11    required by Civil Local Rule 3-16.  Other than the named party, San Bruno Mountain Watch, Plaintiff

12    has no other interest to report.

13        Defendants' Statement:  Defendants have filed the "Certification of Interested Entities or

14    Persons" required by Civil Local Rule 3-16.  Other than the named parties, Defendants Brookfield

15    Northeast Ridge II LLC and Brookfield Bay Area Builders Inc. certify that Brookfield Homes

16    Corporation, Brookfield Bay Area Holdings LLC, and John J. Ryan, Jr., Trustee of the Ryan Family

17    Trust, have a financial interest in the subject matter in controversy or in a party to the proceeding, or

18    have a non-financial interest in that subject matter or in a party that could be substantially affected by

19    the outcome of this proceeding.  Brookfield Homes of California Inc. has no association, role in, or

20    responsibility for the development of the project that is at issue in this case.  Brookfield Homes is a

21    marketing name and does not exist as a corporate entity.  Defendants have asked Plaintiff to dismiss

22    Brookfield Homes of California Inc. and Brookfield Homes.

23

24    Dated:  July 8, 2008                         LAWYERS FOR CLEAN WATER, INC.

25

26                                                      /s/ Daniel Cooper
                                               By:   _____
27                                                    Daniel Cooper
                                                      Attorneys for Plaintiffs
28                                                    San Bruno Mountain Watch

1

2    Dated: July 7, 2008                     SHEPPARD, MULLIN, RICHTER, & HAMPTON, LLP

3

4                                                    /s/ Keith Garner
                                        By:    _____
5                                              Keith Garner
                                               Attorneys for Defendants
6                                              Brookfield Northeast Ridge II LLC, Brookfield Bay
                                               Area Builders Inc., and Brookfield Homes of
7                                              California Inc.

8

9         I, Drevet Hunt, attest that the content of this document is acceptable to all persons required to

10   sign this document.

11

12   Dated: July 8, 2008                     LAWYERS FOR CLEAN WATER, INC.

13

14                                                   /s/ Drevet Hunt
                                        By:    _____
15                                             Drevet Hunt
                                               Attorneys for Plaintiffs
16                                             San Bruno Mountain Watch

17

18

19

20

21

22

23

24

25

26

27

28